UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIDZETTE LANE, Individually and as the Personal Representative of the Estate of Ralphael Briscoe**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DISTRICT OF COLUMBIA,** *et. al.,*<br><br>**Defendants.** | C.A. No.: 12- 00514 (CRC) |

### DEFENDANTS' BENCH MEMORANDUM REGARDING LAWFULNESS OF POLICE OFFICERS' PURSUIT OF RALPHAEL BRISCOE

Defendants Chad Leo and the District of Columbia, by and through undersigned counsel, hereby submit to the Court the following bench memorandum regarding the lawfulness of the pursuit of Ralphael Briscoe by Metropolitan Police Department Officers Chad Leo, Jordan Katz, Roberto Torres and Thomas Sheehan.

### I.     EVIDENTIARY BACKGROUND

Defendants submit that the following undisputed evidence regarding the initial contact and pursuit of Ralphael Briscoe has been presented during the trial of this matter. On April 26, 2011, Raphael Briscoe was standing on the sidewalk in and around the Forest Ridge Apartments located in the 2400 block of Elvans Road, S.E., Washington, D.C., an area known to the police as a high crime area, where shootings have occurred. At that same time, Metropolitan Police Department Officers Chad Leo, Thomas Sheehan, Jordan Katz and Roberto Torres were working on patrol in that area as part of the Gun Recovery Unit of the D.C. Metropolitan Police

Department (MPD).  The officers were operating an unmarked black Ford Explorer, and were wearing vests that visibly displayed the word POLICE in front.

As the officers approached Mr. Briscoe in their vehicle, he began to walk away.  Officer Katz or Officer Sheehan inquired of Mr. Briscoe whether he was carrying a gun.  Mr. Briscoe did not respond but quickened his walk away from the officers.  Officers Katz and Sheehan then began to exit the vehicle in an effort to talk to Mr. Briscoe who then began to flee from the officers by running out of the apartment complex onto Elvans Road.  Based upon the suspicious conduct of Mr. Briscoe, the officers concluded that he could be fleeing because he possessed an illegal firearm or other contraband.  Officers Katz and Sheehan began to give chase, without success.   Defendant Leo and Officer Torres also gave chase of Mr. Briscoe in the Ford Explorer.

At trial, Plaintiff's police procedures expert James Bradley opined that although the officers' initial "contact" with Mr. Briscoe was within proper police procedures, their decision to pursue Mr. Biscoe on foot and by vehicle was outside of proper procedures because at that point it was unlawful for them to stop Mr. Briscoe who was merely running away from the officers.  This testimony by Mr. Bradley was not contained in his report and was contrary to his deposition testimony given a year earlier. *See* Bradley Deposition at 111-112.  Although Mr. Bradley submitted a supplement report after his deposition, it did not contain these new opinions.  As demonstrated below, Mr. Bradley's testimony regarding the chase is:  (1) contrary to what the Defendants were informed were Mr. Bradley's opinions on this issue, (2) contrary to the case law regarding this issue, and (3) unfairly confuses the jury.

II.     LEGAL ANALYSIS

An investigatory stop of a private citizen is allowed when the police officer has specific, articulable facts which, when taken together with rational inferences, create a reasonable

suspicion that the private citizen is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 27 (1968). The facts forming the basis of reasonable suspicion need not rise to the level of probable cause and do not require an officer to actually observe the commission of a crime. *Delaware v. Prouse,* 440 U.S. 648 (1979). Therefore, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is, in fact, carrying a weapon and to neutralize the threat of physical harm." Terry, 392 U.S. at 24. Here, given that Ralphael Briscoe, while in a high crime area, initially began walking away from the police and quickened his pace only after he was asked whether he was carrying a gun and then fled when two of the officers exited their vehicle, the officers had a reasonable suspicion that Mr. Briscoe was involved in criminal activity. *See Illinois v Wardlow*, 528 U.S. 119 (2000) (*passim*).

The circumstances confronting the police officers in *Wardlaw* is nearly identical to the facts here. In that case, police officers conducting a special narcotics operation and patrolling in a four-car caravan observed a person standing next to a building in a high drug-trafficking area holding an opaque bag. *Id.* at 121-22. The person then looked in the direction of the officers and fled. *Id*. at 122. The officers gave chase and eventually cornered the person on the street, stopped him, and, in the ensuing protective search, found a loaded handgun inside the opaque bag. Id. The Court held that these circumstances justified the investigatory stop of the suspect. *Id*. at 125. The Court reasoned that an individual's flight from the police, plus his presence in a high-crime neighborhood, equaled reasonable suspicion justifying a *Terry* stop. *Id*. at 123-24. The *Wardlow* Court also opined that "the reasonable suspicion determination must be based on commonsense judgments and inferences about human behavior." *Wardlow,* 528 U.S. at 119.

Here, as in *Wardlow,* Mr. Briscoe was observed in a high crime area and upon noticing the police he began to walk away. Moreover, Mr. Briscoe fled when asked whether he was carrying a weapon. These circumstances pursuant to *Terry* and *Wardlow* justified the investigative stop of Mr. Briscoe and as a result, the officers' pursuit cannot be deemed to be improper or unlawful. The District's MPD officers' common sense judgments and inferences about human behavior formed the reasonable suspicion that criminal activity was afoot.

Given Mr. Bradley's expert report, along with his deposition testimony that other than the shooting he had no problem with the officers' conduct as related to Mr. Briscoe, Mr. Bradley should not have been allowed to testify contrary to his disclosure that the police chase of Mr. Briscoe was proper, and thus that testimony should be stricken. *See* Bradley Deposition at 111-112. Fed. R. Civ. P. 26(a)(2)(B)(1) requires that any expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." In accordance with Rule 26(a)(2)(E), "parties *must* supplement these disclosures when required under Rule 26(e)." Emphasis added. Mr. Bradley never supplemented his report to include any opinion that the chase of Mr. Briscoe conducted by the officers was improper. More importantly, Mr. Bradley's opinions are contrary to the holdings in both *Terry, Wardlaw,* and *Henson v. United States*, 55 A.3d 859, 869 (D.C. 2012).

In *Henson,* three young men were walking in a high crime area in northeast D.C. when uniformed police officers pulled alongside them because they wanted to talk to them about some recent robberies in the area. They asked the men if they would agree to a pat-down for weapons and while two of them agreed, the third initially agreed but changed his mind. The third young man began walking away and when the police asked him where he was going, he ran away. The officers gave chase and caught him when he slipped and fell on snow some twenty or thirty yards

away.  The young man was searched and a gun was found in his waistband.  The Court found the chase of the young man lawful as reasonable suspicion exited for the chase.  According to the Court, several factors gave rise to reasonable suspicion in this case, including but not limited to the late hour, the fact that the events took place in a high crime area, the furtive gestures and movements of the young man, appellant's the sudden flight.  Here, as explained before, the conduct of Mr. Briscoe as described by the officers gave rise to reasonable suspicion of criminal activity and the chase was lawful.  Allowing the jury to rely on Mr. Bradley's testimony that the chase was improper would confuse the jury as to the law.  Because a significant thrust of Plaintiff's case is based on Mr. Bradley's opinion that the officers acted improperly when they chased Mr. Briscoe, and such is not the case or the law, the Court should give the following instruction to the jury.

> I instruct you that as a matter of law it was proper and not unlawful for the officers to give chase to Ralphael Briscoe given the circumstances of this case.  You may not consider evidence contrary to that legal principle.

Respectfully submitted:

KARL C. RACINE
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

  /s/ Patricia A. Oxendine_____
PATRICIA A. OXENDINE
D.C. Bar No.  428132
Chief, Civil Litigation Division, Section IV

   /s/ Robert Deberardinis_____
KERSLYN D. FEATHERSTONE
D.C. Bar No. 478758
ROBERT DEBERARDINIS
D.C. Bar No. 335976
Assistant Attorney General

441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
202/724-6600; 202/724-6642 (direct);
202/727-6295 (main)
202/741-8924 (fax)
Email: kerslyn.featherstone@dc.gov;
robert.deberardinis@dc.gov

*Attorneys for Defendants*